JOHNSON, J.
_JjPlaintiff/Appellant, Mark .Anthony Jenkins, Sr., appeals the sustaining of peremptory exceptions of res judicata and no cause of action in favor of Defendant/Ap- *1084 pellee, Latasha Jackson, resulting in the dismissal of his petition for nullification in the 24th Judicial District Court, Division “A”. For the following reasons, we affirm the dismissal of the petition for nullification.
FACTS AND PROCEDURAL HISTORY
The pertinent facts of this extensive matter are as follows:
Mark Anthony Jenkins, Sr. and Latasha Jackson began them relationship while Ms. Jackson was in high school. During the time of their sexual involvement, Ms. Jackson became pregnant. On September 18, 1997, Mark Anthony Jenkins, Jr. (hereinafter referred to as “Mark, Jr.”) was born to Latasha Jackson. According to Mr. Jenkins, he signed an acknowledgement of paternity establishing filiation to Mark, Jr., and the acknowledgement was filed by November 1997.[1] The following year, on May 31, 1998, Mr. Jenkins and Ms. Jackson were married. At some point, the parties separated, and Ms. Jackson obtained a judgment of child support against Mr. Jenkins on October 27, 2003. Mr. Jenkins and Ms. Jackson were divorced on April 13, 2004.
On February 15, 2012, Mr. Jenkins filed a “Petition for Revocation of Acknowledgement of Paternity, for Damages Due to Fraud under C.C. art. 2315, and for Restoration of Payments Not Due under C.C. art. 2299” in the 24th Judicial District Court. In his petition, Mr. Jenkins alleged that Ms. Jackson fraudulently concealed the truth about the paternity of Mark, Jr. and obtained child support while knowing that another man, Samuel Scott, was the biological father. He also alleged that he mistakenly signed the acknowledgement of paternity for Mark, Jr. [2In addition, Mr. Jenkins sought to have his acknowledgement of paternity revoked, monetary damages from Ms. Jackson, and a court order for a paternity test for himself and Mark, Jr.
In opposition to the petition for revocation, Ms. Jackson filed an “Exception of Prescription and/or No Cause/Right of Action.” In her exception, Ms. Jackson argued that Mr. Jenkins’ right to revoke the formal act of acknowledgement was per-empted because he failed to disavow Mark Jr. within 180 days of the marriage; thus, he had neither a right of action nor cause of action to revoke the acknowledgement. The matter was heard by a domestic commissioner. In a judgment rendered on July 5, 2012, the domestic commissioner sustained the exception of prescription but overruled the exceptions of no cause of action and no right of action. Mr. Jenkins filed a “Motion for New Trial,” which was heard on September 13, 2012. A new trial was granted, and the matter was set for arguments.[2] On October 15, 2012, the domestic commissioner rendered a judgment in favor of Mr. Jenkins, which overruled Ms. Jackson exception of prescription. Ms. Jackson objected to the domestic commissioner’s ruling.
*1085 The matter was heard by the trial court on January 16, 2013. In a judgment rendered on January 22, 2013, the trial court overruled Ms. Jackson’s exception of prescription. The trial court also ordered genetic testing and assigned costs for the test. Ms. Jackson sought supervisory review of the trial court’s judgment.
In Jenkins v. Jackson, 13-296 (La. App. 5 Cir. 5/14/13) (unpublished writ disposition), writ not considered, 13-1835 (La. 8/22/13); 122 So.3d 1009, this Court granted Ms. Jackson’s writ application in part, reversing the trial court’s ruling on the exception of prescription and rendering a ruling that sustained the | {¡exception. Citing J.P. v. C.E., 12-20 (La.App. 3 Cir. 5/2/12); 94 So.3d 107, this Court found that the two-year prescriptive period in La. R.S. 9:406 should apply prospectively from its effective date, which was August 15, 2008. Because Mr. Jenkins did not file his petition to revoke until February 15, 2012, which was well over the two years from the effective date, Mr. Jenkins’ action to revoke his acknowledgement of paternity was prescribed. This Court also vacated the order for genetic testing and remanded the matter to the trial court for determination of whether Mr. Jenkins was entitled to the genetic testing pursuant to applicable law, specifically La. R.S. 9:396. Upon remand, Mr. Jenkins filed a “Motion for Court to Rule on Petitioner’s Previous Motion for Genetic Testing under R.S. 9:396.” The trial court granted the motion and ordered that Mr. Jenkins, Ms. Jackson and Mark, Jr. submit to the genetic testing.[3]
On September 11, 2013, Mr. Jenkins filed a “Motion to Amend Petition to Annul Judgment of Juvenile Court.”[4] In that motion, Mr. Jenkins alleged that he filed a petition to nullify child support in the juvenile court; however, he was informed by the court that the nullification had to take place in the district court. Mr. Jenkins sought to amend his original petition filed, which was filed in the trial court, to include a request for damages for mental anguish and nullification of the judgment of child support rendered in the juvenile court. The motion was heard by the trial court and granted on November 25, 2013.
Mr. Jenkins subsequently filed a “Petition for Nullification of the Judgment of the Fifth Circuit which Reversed a Judgment of This Court” on June 25, 2014. In that petition, Mr. Jenkins sought to annul the portion of the May 14, 2013 writ disposition of this Court that found his right to revoke the acknowledgement prescribed. He alleged that his acknowledgement of paternity was signed at the | ¿hospital after Mark, Jr. was born, but the only copy of the acknowledgement was destroyed during Hurricane Katrina, while in the possession of the State.[5] Mr. Jenkins sought to have the judgment of this Court annulled on the basis that it did not consider whether the form of the acknowledgement was by authentic act.
On October 14, 2014, Mr. Jenkins filed a “Rule to Show Cause Why Plaintiffs Name Should Not Be Removed from the Birth Certificate and Why An Expert Should Not be Appointed to Calculate Probability of Paternity.” In that pleading, Mr. Jenkins requested that, since the ge *1086 netic testing ordered by the court showed that he cannot be Mark, Jr.’s biological father, the testing be admitted into evidence, the signing of the birth certificate be given no legal effect, and his name be removed from the birth certificate. Mr. Jenkins also requested that an expert be allowed to use Samuel Scott’s DNA report [6] to calculate the probability of paternity, and Ms. Jackson be cast with the costs of the genetic testing.
In opposition to Mr. Jenkins’ petition to revoke acknowledgement and rule to show cause, Ms. Jackson filed an “Exception of Prescription,” arguing that Mr. Jenkins’ cause of action was prescribed under the ten-year liberative prescriptive period. She also argued that fraud was not a procedural avenue that could be used to vitiate the birth certificate; specifically, Mr. Jenkins could have ascertained the truth regarding his paternity of Mark, Jr. prior to signing the birth certificate.
A hearing on Mr. Jenkins’ rule to show cause was held on January 21, 2015. In a judgment rendered on February 4, 2015, the trial court denied the rule and made a handwritten notation that “no authority [was] provided by mover to show this court that this is the proper procedure to alter or amend birth certificates. Dept, of Vital Records is not a party.” In a separate judgment rendered on the same date, the trial court overruled Ms. Jackson’s exception of prescription, admitted the genetic testing into evidence, found that Mr. Jenkins is not the father |fiof Mark, Jr., and ordered Ms. Jackson to reimburse Mr. Jenkins for the total costs incurred for the testing, which included attorney’s fees and court costs. The trial court also ordered a rule to show cause hearing to show why the birth certificate should not be altered and why DCFS should not authorize the calculation of Mr. Scott’s probability of paternity for Mark, Jr.
Ms. Jackson filed a “Motion and Order for Appeal” on February 24, 2016, seeking appellate review of the trial court’s rulings that overruled her exception of prescription and ordered her to pay the costs incurred to prove paternity. The motion was granted by the trial court, and an appeal was lodged. This Court dismissed Ms. Jackson’s appeal through an order on May 26, 2015, finding that the trial court’s February 4th judgments were not final judgments. Ms. Jackson was allowed 30 days to file an appropriate writ application seeking review of the interlocutory rulings.
After the trial court rendered its February 4th judgments, Mr. Jenkins filed a “Petition for Alternation of a Birth Certificate to Remove Petitioner’s Name as Father of the Child, Void His Signature, and Change the Surname of the Child” on February 9, 2016. Subsequently, he filed a “Motion to Amend Petition a Third Time.” In that motion, Mr. Jenkins sought permission to add allegations against DCFS, mainly that it failed to establish paternity prior to obtaining a judgment of child support against him for Mark, Jr. Mr. Jenkins also filed a “Motion for Order to Calculate the Probability of Paternity.” He claimed that he obtained permission from the juvenile court to allow the use of the DNA report for Mr. Scott and requested that the DNA information be used in the instant matter.
On June 23, 2015, Ms. Jackson filed a supervisory writ with this Court, seeking review of the trial court’s February 4,2016 judgments. Ms. Jackson alleged that the trial court erred when it overruled her *1087 exception of prescription and found Mr. Jenkins not to be the legal father of Mark, Jr. She argued that Mr. | fiJenkins’ cause of action was prescribed under La. R.S. 9:392 and 9:406.[7] Ms. Jackson further alleged that the trial court erred in ordering her to reimburse Mr. Jenkins for the costs incurred in obtaining the genetic testing. In opposition to the writ application, Mr. Jenkins contended the prior writ disposition did not preclude his claim to rebut the presumption of legal paternity created by signing Mark, Jr.’s birth certificate because there was no evidence of an authentic act of acknowledgement.
In Jenkins v. Jackson, 15-399 (La. App. 5 Cir. 6/23/15) (unpublished writ disposition), writ denied, 15-1622 (La. 9/4/15); 177 So.3d 709,[8] Ms. Jackson’s writ application was granted in part and denied in part. This Court found that Mr. Jenkins had judicially confessed, in more than one pleading, that he signed both the birth certificate and an acknowledgement of paternity at the time of Mark, Jr.’s birth in 1997, and that Mr. Jenkins’ confession constituted full proof against him. Consequently, this Court found that Mr. Jenkins’ subsequent allegations that he could not remember signing any acknowledgement or that no authentic act of acknowledgement existed could not be considered for purposes of pursuing another attempt to revoke or rebut his acknowledgement of legal paternity in this matter. Thus, Mr. Jenkins’ cause of action was again found to be prescribed pursuant to La. R.S. 9:406. The trial court’s ruling concerning prescription was reversed, and Ms. Jackson’s exception was sustained as to Mr. Jenkins’ claim to revoke or rebut his acknowledgement of legal paternity. This Court further found no error in the portions of the trial court’s judgment that found Mr. Jenkins was not 17the father of Mark, Jr., based upon the paternity test report, and ordered Ms. Jackson to reimburse Mr. Jenkins for the costs incurred in obtaining the genetic testing and court costs; however, the order for Ms. Jackson to pay Mr. Jenkins’attorney’s fees was vacated.
On October 7, 2015, Mr. Jenkins filed a "Motion to Dismiss the Allegations against DCFS Contained in the Third Amendment to the Petition and Motion to Rebut Finding of Judicial Confession to Signing ‘An Acknowledgment’ other Than the Birth Certificate.” In the motion, Mr. Jenkins alleged that Ms. Jackson and DCFS judicially confessed in the juvenile court proceeding that there was no authentic act of acknowledgement, and the June 23rd writ disposition from this Court was not the law of the case. He sought to dismiss his allegations against DCFS in his third amendment to his petition and sought admission of the judicial confessions of DCFS and Ms. Jackson into evidence for the purposes *1088 of rebutting this Court’s legal paternity finding. The motion was heard before the trial court on October 16, 2016. In a judgment rendered on February 1, 2016, the motion was denied.
Subsequently, in the same proceeding, Mr. Jenkins filed a “Petition for Nullification 1) Request Nullification of Fifth Circuit’s Ruling for Lack of Jurisdiction and for Fraud and Ill-Practice in the Writ Application, 2) Request a Finding that R.S. 9:406(B)(2) is Unconstitutional, and 3) Request an Injunction against Enforcement of the Rulings” on March 10, 2016. Among his numerous allegations, Mr. Jenkins alleged that the rulings of this Court in the prior writ dispositions regarding the existence of an authentic act of acknowledgement and legal paternity were null because this Court lacked the subject matter jurisdiction to consider the legal paternity of Mark, Jr. He further alleged that Ms. Jackson’s attorney obtained the rulings in her favor through fraud and ill practices because she misrepresented the law by claiming that the signing of the birth certificate |smade him the legal father of Mark, Jr. and by failing to enter the judicial confession of Ms, Jackson from the juvenile court that there was no authentic act of acknowledgement. He maintained that enforcement of the rulings obtained through fraud and ill practices would be unconscionable and inequitable because injustice was brought about by depriving him of notice and the right to be heard. Mr. Jenkins also alleged that La. R.S. 9:406(B)(2) was unconstitutional because it did not provide for a suspension of the two-year prescriptive period to revoke an authentic act of acknowledgement obtained by fraud.
On April 5, 2016, Ms. Jackson filed an “Exception of No Cause of Action, Res Judicata, and for Sanctions.” Ms. Jackson argued that Mr. Jenkins’ petition for nullification did not state a cause of action upon which relief could be granted. She claimed that Mr. Jenkins’ grounds for nullifying the rulings were baseless; thus, she requested that the action be dismissed. She also argued that Mr. Jenkins’ action sought to re-litigate issues that were already considered by this Court and the supreme court. As a result of the repeated litigation of the same issues and the personal attack upon her attorney, Ms. Jackson requested sanctions against Mr. Jenkins. The exception was heard before the trial court on May 16, 2016. On May 24, 2016, the trial court sustained the exceptions of no cause of action and res judicata and denied the request for sanctions.[9] The instant appeal followed.
^ASSIGNMENTS OF ERROR
On appeal, Mr. Jenkins alleges the trial court erred in sustaining the peremptory exceptions of no cause of action and res judicata, which resulted in the dismissal of his action. He argues that the litigation has focused entirely on whether the two- *1089 year prescriptive period of La. R.S. 9:406 applied to an act executed in 1997, not whether there had actually been an authentic act of acknowledgement executed by him.
LAW AND ANALYSIS
No Cause of Action
Mr. Jenkins alleges the trial court erred in sustaining Ms. Jackson’s exception of no cause of action. He claims that his petition for nullification is authorized by La. C.C.P. art. 2006 and is not simply another request for review of this Court’s previous rulings. Mr. Jenkins avers that the grounds for nullity raised in his petition are mainly based upon lack of subject matter jurisdiction over the issue of legal paternity and deprivation of the right to be heard through having an opportunity to present evidence. When taking the allegations of the petition as time, Mr, Jenkins claims that his petition stated valid causes of action.
Ms. Jackson argues that the trial court did not err in sustaining her exception of no cause of action because: 1) Mr. Jenkins failed to raise the claim of lack of subject matter jurisdiction with the supreme court following this Court’s July 31, 2016 writ disposition; and 2) the claims of fraud and ill practices and unconstitutionality of La. R.S. 9:406(B)(2) were moot issues. Because Mr. Jenkins failed to raise his subject matter jurisdiction claim before the supreme court, Ms. Jackson contends the claim is now a moot issue. She further contends that Mr. Jenkins’ claims of fraud and ill practices are moot issues because those claims were considered in this Court’s July 31, 2015 writ disposition.
| ípThe function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Guidry v. Hanover Ins. Co., 09-220 (La.App. 5 Cir. 11/10/09); 28 So.3d 426, 428, writ denied, 09-2701 (La. 2/26/10); 28 So.3d 272, citing Louisiana Paddle-wheels v. Louisiana Riverboat Gaming Commission, 94-2015 (La. 11/30/94); 646 So.2d 885, 888. The exception’s function is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Id, citing Everything on Wheels Subaru, Inc. v. Subaru South, 616 So.2d 1234, 1235 (La. 1993). No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. Id. at 429, citing La. C.C.P. art. 931. The exception of no cause of action is triable solely on the face of the papers; and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Id. citing City of New Orleans v. Board of. Commissioners, 93-690 (La. 7/5/94); 640 So.2d 237, 253.
The standard of review of an appellate court review of the judgment sustaining an exception of no cause of action is de novo because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition. Id. A petition should not be dismissed for failure to state a cause of action, unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. Id., citing Fink v. Bryant, 01-987 (La. 11/28/01); 801 So.2d 346, 349.
We will now review Mr. Jenkins’ claims to determine whether they were properly sustained and dismissed by the trial court. Subject Matter Jurisdiction
Mr. Jenkins alleges this Court lacked the subject matter jurisdiction to determine his legal paternity of Mark, Jr. when reviewing Ms. Jackson’s *1090 ^¿¿supervisory writ applications. As a result, he contends that the writ dispositions rendered by this Court are null and void.
The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art. 2001. A final judgment shall be annulled if it is rendered by a court which does not have jurisdiction over the subject matter of the suit. La. C.C.P. art. 2002(A)(3). Except as otherwise provided in La. C.C.P. art. 2003, an action to annul a judgment on the grounds for vices of form may be brought at any time. La. C.C.P. art. 2002(B).
The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. Canal/Claiborne, Ltd. v. Stonehedge Dev., LLC, 14-664 (La. 12/9/14); 156 So.3d 627, 632, citing La. C.C.P. art. 3. Thus, a judgment rendered by a court with no jurisdiction over the subject matter of the action or proceeding is void. Id.
According to La. Const, art. V, § 10, except as otherwise provided by the constitution, a court of appeal has appellate jurisdiction of all civil matters appealed, including matters from family and juvenile courts, and supervisory jurisdiction over cases which arise within its circuit. A district court has original jurisdiction over all civil and criminal matters, with the exception of the excluded cases listed in the constitution. La. Const, art. V, § 16.
In the instant matter, this Court reviewed supervisory writ applications arising from Mr. Jenkins’ petition for revocation of acknowledgement of paternity, which was properly filed in the 24th Judicial District Court.[10] The district court had the jurisdiction to determine both the legal and biological paternity of Mark, Jr. in its review of Mr. Jenkins’ petition to revoke. Because the 24th Judicial District Court is a district court within our circuit, this Court had the supervisory | ^jurisdiction to render determinations relevant to Mr. Jenkins’ petition, which included the legal and biological paternity of Mark, Jr. As such, despite his assertion that this Court lacked subject matter jurisdiction, Mr. Jenkins’ legal paternity of Mark, Jr. was properly before this Court for review in the two supervisory writ applications at issue.[11]
Mr. Jenkins’ contention that this Court had no subject matter jurisdiction to determine his legal paternity of Mark, Jr. lacks merit beyond a doubt because no set of facts could have been proven in support of his claim. Thus, there is no relief that could be granted to Mr. Jenkins, and the claim should have been dismissed. See Guidry, supra. Accordingly, we find that the trial court properly sustained Ms. Jackson’s exception of no cause of action on the claim of lack of subject matter jurisdiction raised in Mr. Jenkins’ petition for nullification.

Fraud and III Practices

Mr. Jenkins alleges the writ applications rendered by this Court should be considered as null and void because Ms. Jackson’s counsel, Kristyl Treadaway, deliberately misrepresented the law and facts of the case by stating that the trial *1091 court rendered a determination on legal paternity. He argues that the trial court only rendered a determination on biological paternity. He also alleges that Ms. Treadaway failed to present, either to the trial court or this Court, her judicial confession from the juvenile court case that no authentic act of acknowledgement ever existed.
A final judgment obtained by fraud or ill practices may be annulled within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices. La. C.C.P. art. 2004(A) and (B). To annul a judgment obtained by fraud or ill practices, a direct action (ie., a new and separate proceeding) must be | ^brought for that purpose in the court which rendered the judgment. Regions Bank v. Cabinet Works, L.L.C., 11-748 (La.App. 5 Cir. 4/10/12); 92 So.3d 945, 961, quoting, Succession of Schulz, 622 So.2d 693 (La. App. 4th Cir. 1993). Such a nullity may not be asserted collaterally. Id. Filing a petition of nullity of judgment in existing proceedings, including the proceedings in which the judgment complained of was rendered, is not a direct action but a collateral attack. Id.
In his petition for nullification, Mr. Jenkins attempted to have the writ dispositions of this Court declared null and void on the basis that they were obtained through fraud and ill practices. However, Mr. Jenkins did not file a direct action alleging fraud and ill practices; rather, he collaterally asserted those grounds under the same district court number as his petition for revocation. He attempted to collaterally attack the proceedings in which the writ dispositions complained of were rendered, ultimately rendering his attack procedurally deficient. Consequently, Mr. Jenkins’ claim in his petition for nullification that the writ dispositions were null and void due to fraud and ill practices did not state a cause of action upon which he would be entitled to relief. The nullification of the writ dispositions on the grounds stated by Mr. Jenkins could not be granted in his collateral attack in this proceeding but only in a direct action.
Accordingly, we find that the trial court properly sustained Ms. Jackson’s exception of no cause of action on the issue of fraud and ill practices and properly dismissed Mr. Jenkins’ claim.

Constitutionality of La. R.S. 9:j,06(B)(2)

In addition to nullification claims, Mr. Jenkins alleged La. R.S. 9:406(B)(2) is unconstitutional because it does not provide for suspension of the two-year prescriptive period and rules out contra non valentum. As a result, Mr. Jenkins contends that La. R.S. 9:406(B)(2) permits the deprivation of any opportunity to exercise the vested right to revoke an authentic act of acknowledgement obtained |i4by fraud when the victim does not learn of the fraud until the two-year period has expired.
After review, we find that the trial court erred in sustaining Ms. Jackson’s exception of no cause of action on the constitutionality of La. R.S. 9:406(B)(2). If accepted as true, the allegation that La. R.S. 9:406(B)(2) is unconstitutional states a cause of action. Additionally, if successful, the law extends a remedy for an action on that basis, which would be the declaration that the statutory provision is unconstitutional. Thus, the trial court erroneously dismissed Mr. Jenkins’ claim on the constitutionality of La. R.S. 9:406(B)(2). Therefore, we vacate the trial court’s ruling on this issue.

Res Judicata

Mr. Jenkins alleges the trial court erred in sustaining Ms. Jackson’s exception of res judicata. He argues that the issues raised in his petition for revocation of acknowledgement of paternity, which *1092 subsequently had trial court rulings reviewed through writ applications, were not the same issues raised in his petition for nullification. Mr. Jenkins contends that neither of this Court’s previous writ dispositions addressed whether an authentic act of acknowledgement was signed by him, which was one of the claims presented in his petition for nullification along with lack of subject matter jurisdiction over the issue of legal paternity, Thus, he avers that his grounds for nullity were not considered by the appellate court.
Conversely, Ms. Jackson maintains that her exception of res judicata was properly sustained because this Court previously addressed and dismissed Mr. Jenkins’ claim to revoke or rebut his acknowledgement. She argues that the July 31, 2015 writ disposition precluded future legal challenges regarding the acknowledgement of Mark, Jr., either by authentic act or judicial confession. She further argues that the majority of the issues raised in Mr. Jenkins’ petition for 11finullity related to his acknowledgement had already been dismissed with prejudice by this Court.
Louisiana’s law of res judicata is set forth in La. R.S. 13:4231, which provides,
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3)A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The Louisiana Supreme Court has established the following five elements that must be satisfied for a finding that a second action is precluded by res judicata : 1) the judgment is valid; 2) the judgment is final; 3) the parties are the same; 4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and 5) the cause or causes of action in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. McLean v. Majestic Mortuary Servs., 11-1166 (La.App. 5 Cir. 5/22/12); 96 So.3d 571, 575. Appellate courts review exceptions of res judicata using the de novo standard of review because these exceptions present legal questions. Id.
We will now review the relevant prior rulings rendered in this matter. This Court rendered two writ dispositions: one on May 14, 2013 and the other on July 31, 2015. In the disposition rendered on May 14, 2013, this Court considered whether the prescriptive period for Mr. Jenkins’ right to revoke an authentic act of ac-knowledgement of paternity had lapsed, as argued in Ms. Jackson’s exception of | ^prescription. In the reversal of the trial court’s ruling, this Court sustained Ms. Jackson’s exception and found that Mr. Jenkins’ cause of action to revoke his ac-knowledgement of paternity had prescribed under La. R.S. 9:406. Mr. Jenkins’ writ application to the supreme court that sought review of this Court’s disposition was not considered.
*1093 In the disposition rendered on July 31, 2015, this Court reviewed the trial court’s ruling that overruled Ms. Jackson’s second exception of prescription, wherein she again claimed that Mr. Jenkins’ claim to revoke his acknowledgement of paternity was prescribed. In its ruling, the trial court found that Mr. Jenkins was not the father of Mark, Jr. On review, this Court considered Mr. Jenkins allegation raised in opposition to the exception that he “learned that there was never a notarial act or an authentic act of acknowledgment—only a signed birth certifícate.” Mr. Jenkins’ claim that the prior writ disposition did not preclude his claim to rebut the presumption of legal paternity created by the signing of the birth certificate was also considered.
Reversing the trial court’s ruling on prescription a second time, this Court found that Mr. Jenkins judicially confessed to signing both the birth certificate and an acknowledgement of paternity at the time of Mark, Jr.’s birth in more than one pleading to the courts, and found his confession to constitute full proof against him. This Court further found that Mr. Jenkins’ allegations suggesting that he could not remember signing any acknowledgement other than the birth certificate or that an authentic act of acknowledgement does not exist could not be considered for purposes of pursuing another attempt to revoke or to rebut his acknowledgement of legal paternity in this case. In the reversal, it was noted that
our May 14, 2013 writ disposition held that “[respondent’s] cause of action to revoke his acknowledgment of paternity has prescribed.” Respondent neither contested the form of his acknowledgment at the time that writ application was considered by this Court, nor did he file a timely writ of review to the Louisiana Supreme Court regarding that Indecision. Accordingly, we find that respondent cannot circumvent this Court’s prior ruling regarding the prescriptive period applicable to his acknowledgment of paternity by filing a rule to show cause in the trial court, which attempted to re-eharacterize the nature of that acknowledgment in a manner contrary to respondent’s judicial confession made at the time of our prior writ disposition. Therefore, we find that the trial court erred in denying relator’s exception of prescription because we have already held that respondent’s cause of action to revoke his acknowledgment of legal paternity has prescribed. (Internal citations omitted).
Accordingly, Ms. Jackson’s exception of prescription was sustained, and Mr. Jenkins’ claim to revoke or rebut his acknowl-edgement of legal paternity of Mark, Jr. was dismissed with prejudice. The supreme court denied Mr. Jenkins’ writ application that sought review of this Court’s disposition.
In his petition for nullification, Mr. Jenkins alleged that the writ dispositions were null and void because this Court lacked the subject matter jurisdiction to determine the legal paternity of Mark, Jr. He also alleged that the rulings in Ms. Jackson’s favor should be considered null and void because she obtained them through fraud and ill practices. Mr. Jenkins further alleged that La. R.S. 9:406(B)(2) was unconstitutional because it failed to provide for a suspension of the prescriptive period to revoke an authentic act of acknowledgement obtained through fraud.
First, as earlier discussed in this opinion, this Court had the subject matter jurisdiction to determine the legal paternity of Mark, Jr. in the previous writ dispositions. Next, we find that we lack the authority to provide further judicial review *1094 of the determination regarding Mr. Jenkins’ acknowledgement under res judicata.
The Louisiana First Circuit, in Poole v. Fuselier, 15-1317, pp. 8-9 (La,App. 1 Cir. 10/28/16); 213 So.3d 18, 23, 2016 WL 6330392, 2016 La. App. LEXIS 1962, explained the finality of an appellate court judgment by stating:
A'judgment that decides the merits of the case in whole or in part is a final judgment. La. C.C.P. art. 1841; Tolis v. Board of Supervisors of 1 Louisiana State University, 95-1529 (La. 10/16/95), 660 So.2d 1206 (per curiam). A final judgment may be rendered by either a trial court or an appellate court, and a judgment by an appellate court that decides the merits of the case is a final judgment, regardless of whether the case reached the appellate court on appeal or on supervisory writs. Tolis, 660 So.2d at 1206. A final judgment is conclusive between the parties except on direct review. La. R.S. 13:4231. Moreover, a final judgment becomes final and definitive and acquires the authority of the thing adjudged if no further review is sought within the time fixed by law, if the Supreme Court denies an application for certiorari, or if the judgment is confirmed on further review. La. C.C.P. arts. 2166(E) & 2167; Tolis, 660 So.2d at 1206; Batson v. S. Louisiana Med. Ctr,, 2006-1998 (La.App. 1 Cir. 6/13/07), 965 So.2d 890, 895-96, writ denied, 2007-1479 (La. 10/5/07), 964 So.2d 945. Once a final judgment becomes final and definitive and acquires the authority of the thing adjudged, no court has jurisdiction, in the sense of power and authority, to modify, revise or reverse the judgment, regardless of the magnitude of the error in the final judgment. Tolis, 660 So.2d at 1206; Batson, 965 So.2d at 896.
In this matter, the July 31, 2015 writ disposition rendered by this Court is a final judgment. While upholding the previous writ disposition, the July 31st disposition determined that Mr. Jenkins is Mark, Jr.’s legal father, sustained Ms. Jackson’s exception of prescription, and dismissed Mr. Jenkins’ petition to revoke his acknowledgement with prejudice. The supreme court subsequently denied Mr. Jenkins’ writ application. Hence, the disposition of this Court that dismissed Mr. Jenkins’ petition to revoke became a final and definitive judgment after the supreme court denied certiorari. Consequently, judicial review that would modify, revise or reverse the July 31st writ disposition is precluded. See Poole, supra. Because the parties are the same, the cause of action asserted in the petition for nullification existed at the time the July 31st writ disposition became a final judgment, and the causes of action in the petition for nullification arose out of his petition for revocation, subsequent review of Mr. Jenkins’ acknowledgement of Mark, Jr. is precluded by res judicata.
Furthermore, we find that Mr. Jenkins’ challenge of the constitutionality of La. R.S. 9:406(B)(2) in this proceeding is also precluded by res judicata. The July 11331st writ disposition that found Mr. Jenkins’ claim to revoke his acknowledgement of Mark, Jr. was prescribed, pursuant to La. R.S. 9:406, is valid and final. The parties to the petition for nullification, Mr. Jenkins and Ms. Jackson, are the same parties to the petition for revocation. Mr. Jenkins’ claim that La. R.S. 9:406(B)(2) is unconstitutional existed at the time the July 31st writ disposition became a final judgment, and the basis of his claim arose out of the finding that his petition for revocation was prescribed. Because the judgment was in favor of Ms. Jackson, all causes of action, which includes Mr. Jenkins’ challenge of the constitutionality of La. R.S. 9:406(B)(2), existing at the time of *1095 final judgment concerning Mr. Jenkins’ ac-knowledgement of Mark, Jr. are extinguished, and the judgment bars a subsequent action on those causes of action. See La. R.S. 13:4231. Therefore, we find that Mr. Jenkins’ claim in this proceeding that La. R.S. 9:406(B)(2) is unconstitutional is precluded from review. (See also, Yarnell Ice Cream, Co. v. Allen, 38,263 (La.App. 2 Cir. 3/3/04); 867 So,2d 969, where the appellate court held that a constitutional challenge of a statute raised through a petition for nullity, after a final judgment was rendered that considered the application of the same statute in its determination, was barred from review.).
DECREE
For the foregoing reasons, we affirm the dismissal of Mark Jenkins, Sr.’s petition for nullification in favor of Latasha Jackson. Mr. Jenkins is assessed the costs of this appeal.
AFFIRMED

. Mr. Jenkins alleges that he signed an acknowledgment of paternity in his petition for revocation.

. In his ruling, the domestic commissioner found that Mr. Jenkins’ right to revoke the acknowledgement could not prescribe pursuant to the version of La. R.S. 9:406 in effect at the time of the signing of the acknowledgement. In 2007, La. R.S. 9:406(B) provided, At any time, a person who executed an authentic act of acknowledgment may petition the court to rescind such acknowledgment only upon proof, by clear and convincing evidence, that such act was induced by fraud, duress, material mistake of fact or error, or that the person is not the biological parent of the child.

. The trial judge made a handwritten notation that the parties "dispensed with [the determination of Mr. Jenkins' right] in light of [the] hearing held.”

. This was the second request to amend Mr. Jenkins’ petition. In the first amendment, the Department of Children and Family Services (hereinafter referred to as "DCFS”) was added to the action as an indispensable party.

.Mr. Jenkins’ reference is to the Louisiana Department of Health.

. Mr. Jenkins obtained Mr. Scott’s DNA report from another, unrelated matter in the juvenile court.

. Ms, Jackson also argued that Mr. Jenkins should have actually filed a disavowal action pursuant to La. C.C. art. 195, not an action to revoke an acknowledgement, because he fili-ated himself to Mark, Jr. by marrying her after Mark, Jr. was born. However, she maintained that action would have also been prescribed.

. On writ of certiorari to the supreme court, Justice Hughes dissented, stating,
[T]he seemingly untimely review and intervention of the Court of Appeal to decide an issue not addressed in the trial court’s judgment, based on the concept of a "judicial confession,” is clearly wrong given the DNA evidence, the multiple pleadings and amendments thereto, the stipulation of the parties, and the inability of DCFS to produce an authentic act of acknowledgment. This is not justice but judicial "gotcha.” These matters are best left to the trial court for trial on the merits and development of a full record.
The continued efforts of DCFS given the DNA results in the record are also questionable.
(Emphasis in original).

. The initial judgment signed by the trial court did not contain the required decretal language required to render the judgment final because it failed to indicate the specific relief granted. See Morraz-Blandon v, Voiron, 16-112 (La.App. 5 Cir, 8/25/16); 199 So.3d 1220, 1221. As such, after the appeal was lodged, we issued an order instructing the trial court to amend the judgment to include the necessary decretal language. The trial court signed an amended judgment on November 7, 2016 to include decretal language that dismissed Mr. Jenkins’ petition with prejudice. (See generally, Rousseau v, Emp'rs Mut. of Wausau, 493 So.2d 121, 124 (La. App. 5th Cir. 1986), where this Court held that a judgment sustaining an exception of no cause of action is a final, appealable judgment, even in cases where only a portion of the case is dismissed by the exception.) The amended judgment corrected the deficiency in the judgment. Accordingly, we find that a final judgment has been rendered and is reviewable on appeal.

. The Juvenile Court of Jefferson Parish would not have been the proper venue to file such a petition. (See State v. James, 99-1670 (La.App. 4 Cir. 2/23/00); 757 So.2d 811, 813, where the court held, "There is no authority in Ch.C. art. 311 or any other article of the Children’s Code for the filing of a petition to nullify an acknowledgment of paternity in Juvenile Court.... ”)

. We note that both Mr. Jenkins and Ms. Jackson were given the fair opportunity to argue their positions in their respective briefs, as no oral arguments were heard for Ms. Jackson’s supervisory writ applications. This Court considered the arguments presented by both parties.